# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

**THOMAS L. BURSE,**
        **Appellant,**

v.                                                                                          **Case No. 13-cv-1200**

**STATE OF WISCONSIN,**
        **Appellee.**
_____

## DECISION AND ORDER

Thomas Burse, pro se, appeals several decisions of the United States Bankruptcy Court in his Chapter 7 bankruptcy.

## I. Background

Appellant was the sole owner of Buveck Consultants LLC ("Buveck"), a construction company in Milwaukee. Buveck participated in the Disadvantaged Business Enterprise ("DBE") certification program, administered by the Wisconsin Department of Transportation ("WisDOT"). The DBE program requires states to award a certain percentage of federal highway road contracts to DBE-certified companies. In order to be DBE certified, a company must be at least 51% owned or operated by individuals who are socially and economically disadvantaged and must be qualified. Buveck participated in the DBE program as both a prime consultant and as a sub-contractor for other prime consultants.

Appellant filed for Chapter 7 bankruptcy, and appellee, the state of Wisconsin, filed an adversary proceeding on behalf of WisDOT. Appellee alleged that appellant owed WisDOT money for misrepresenting his educational credentials on his DBE certification application and for fraudulently overbilling, and that this debt should not be discharged because it was obtained by false pretenses, misrepresentation, or actual fraud under 11

U.S.C. § 523(a)(2)(A).[1]

The bankruptcy court denied appellant's motion to dismiss for failure to state a claim upon which relief may be granted, and the case proceeded to trial. The bankruptcy court found that appellant had fraudulently obtained money from appellee within the meaning of § 523(a)(2)(A) and determined the debt was non-dischargeable.

## II. Discussion

Burse questions the bankruptcy court's denial of his motion to dismiss, denial of his motions in limine, and determination that the debt is non-dischargeable. He also raises other miscellaneous issues.

### A. Denial of Motion to Dismiss

Appellant filed a motion to dismiss, arguing that appellee's amended complaint did not satisfy the pleading standards of Rules (12)(b)(6) and (9)(b) of the Federal Rules of Civil Procedure. The bankruptcy court denied the motion in a minute order, finding that the amended complaint, together with its attachments, clearly set forth the allegations and pled fraud with sufficient particularity. The court added that appellant's motion focused more on his disagreement with appellee's factual and legal arguments, which is better resolved through summary judgment or trial. R. at 159, ECF No. 1-1.

The decision to deny a motion to dismiss under Rule 12(b)(6) is a question of law that I review de novo. *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). To survive, "a complaint must contain sufficient factual matter, accepted as true, to

---

[1] Appellee also asked the bankruptcy court the enter a money judgment, but the court declined to do so based on *Ortiz v. Aurora Health Care*, 665 F.3d 906 (7th Cir. 2011). The decision to not enter a money judgment is not an issue on appeal.

state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted). Although a plaintiff may not merely recite the elements of a cause of action, a complaint must only provide enough detail to give the defendant fair notice of what the claim is. *Reger Dev., LLC*, 592 F.3d at 764. In other words, the complaint must show that a claim is plausible rather than merely speculative. *Id.* Fraud claims however, must be pled with more particularity, specifying the "who, what, when, where, and how" of the alleged fraudulent act. *Arazie v. Mullane*, 2 F.3d 1456, 1465 (7th Cir. 1993) (internal quotation omitted); *accord* Fed. R. Civ. P. 9(b);

Section 523(a)(2)(A) states that a debtor is not entitled to discharge from any debt that is obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." Under § 523(a)(2)(A), a creditor must show that: "(1) the debtor made a false representation or omission, (2) that the debtor (a) knew was false or made with reckless disregard for the truth and (b) was made with the intent to deceive, (3) upon which the creditor justifiably relied." *Ojeda v. Goldberg*, 599 F.3d 712, 716–17 (7th Cir. 2010). The amended complaint goes beyond simply reciting the elements needed to allege a claim under § 523(a)(2)(A). The complaint alleges facts supporting the first *Ojeda* element by outlining specific incidents when appellant allegedly falsely represented his educational background and specific incidents when he allegedly intentionally overbilled. R. at 93–95, ECF No. 1-1 The complaint also alleges facts supporting the remaining *Ojeda* elements. Related to the misrepresentation of educational credentials, the factual allegation that appellant submitted false diplomas and letters from a university supports the assertion that he knew and intended to deceive and that appellee justifiably relied on this information. *Id.* at 93. Regarding the fraudulent

billing, the factual allegation that appellant agreed to specific rates and then billed for wages exceeding those rates supports the assertion that appellant knew and intended to deceive and that the appellee reasonably relied on his agreement. *Id.* at 94. Thus, I find that the complaint meets the general pleading standard of Rule 12(b)(6).

The complaint also meets the more particular pleading standard of Rule 9(b). In alleging fraud, the complaint gives the particular details required. It alleges who allegedly committed fraud–appellant; what the fraud was–providing false information about education credentials and fraudulent, inflated invoices; when the fraud occurred–regarding the false education information, in 2003 and 2009, regarding the fraudulent billing, 2005 through 2011; where the fraud occurred–in Milwaukee; and how appellant committed the fraud–by submitting false diplomas and letters from a university and by inflating invoices, overbilling, and charging excessive rates. Thus, I conclude that the amended complaint states a claim upon which relief may be granted, and I affirm the bankruptcy court's denial of the motion to dismiss.

**B. Denial of Motions in Limine**

Appellant brought two motions in limine. I review motions in limine for an abuse of discretion. *Aldridge v. Forest River, Inc.*, 635 F.3d 870, 874 (7th Cir. 2011). I will only reverse the trial court's decision if it is clear that the decision was unreasonable. *Griffin v. Foley*, 542 F.3d 209, 217 (7th Cir. 2008). In his first motion, appellant sought to exclude all evidence of time sheets, invoices, tax returns, bankruptcy schedules, payroll registers, invoices, and check registers. The bankruptcy court denied the first motion, stating:

> The first piece of the motion has to do with Mr. Burse's credentials, and I'll just leave it at that. And basically Mr. Burse's argument is that he has made an admission with regard to that issue, and therefore that any further evidence on that

> issue is inadmissible. That in fact is not a correct statement of the law. In particular, it's not a correct statement under the Federal Rules of Evidence. Federal Rule of Evidence 4:03B - - 4:03 indicates that any evidence that tends to make a fact more or less likely is in fact relevant. Rule 6:11 of the Federal Rules of Evidence indicates that the court, me, has the ability and the discretion to decide whether evidence is cumulative or repetitive. And if I hear any evidence in the trial that I feel is cumulative or repetitive, that we're saying the same thing over and over again, that we don't need any additional evidence on that topic, I can make that determination.
>
> But as I sit here right now, there has been no evidence put in at all. We haven't started the trial. So I don't know what the State is going to put in with regard to the issue that you've alleged here. I'll wait and find out. It may be testimony. It may be an admission. It may be something else. If I determine at the time that I hear it that it is cumulative, I'll make that decision at that point in time. But I'm not in a position to make that decision here. So I will deny that motion at this point.
>
> The second issue is that Mr. Burse argues that with regard to time sheets and expense reports, that the evidence should be excluded. . . . his argument is that the - - there are no witnesses through whom to be able to put in that evidence. Again, I have no earthly idea if that's true. I haven't heard the witness yet. Neither have you. So until we hear the witness, we won't know whether or not that evidence is supported by any witness testimony. I will listen to any testimony that gets presented today and I'll make that determination when I hear it.

Supplemental R. at 22–24, ECF No. 19.

The court did not abuse its discretion in denying this motion. The trial court has the discretion to exclude relevant evidence if it is cumulative, *see* Fed. R. Evid. 4:03, and it was within the trial court's discretion to wait until evidence was presented to determine whether evidence was, in fact, cumulative. It was also within the trial court's discretion to wait until it heard witness testimony to determine whether the witness was an appropriate person through whom evidence to admit evidence. *See Aldridge*, 635 F.3d at 874.

During trial, appellant did object to the admission of evidence, arguing it was cumulative and repetitive because he had already admitted to misstating his educational credentials. Supplemental R. at 65–66, ECF No. 19. The court overruled this objection, stating that the information was relevant to whether the misrepresentation was intentional and made with intent to defraud, other elements of appellee's claim. *Id.* Relevance

5

determinations are within the trial court's discretion, and this decision was reasonable.

Appellant also objected to the admission of several pieces of evidence during trial, arguing that the witness was not an appropriate person through whom to introduce the evidence. Federal Rule of Evidence 602 requires that a witness have personal knowledge of matters about which she is testifying. The trial court found that for each of appellant's objections, the witness did have appropriate personal knowledge to offer the testimony the appellee was eliciting. *Id.* at 68–69 (finding witness' role as department records' custodian was sufficient); *id.* at 92–93 (finding witness' role as time sheet approver was sufficient). I cannot say that any of these rulings were unreasonable.

Appellant's second motion in limine sought to preclude appellee from calling appellant as a witness. The bankruptcy court denied this motion as well, stating:

> The second motion that Mr. Burse filed on August 28th is a motion in limine to . . . prohibit the plaintiff from calling Mr. Burse as a witness . . . . The motion . . . is based on Rule 17 - - 702 and 703, Rule 702 and 703 of the Federal Rules of Evidence. Those rules are inapplicable to this motion.
> Rule 702 is the rule that governs the admission of expert testimony. . . . Rule 703 talks about the bases that an expert can use to base his or her testimony on. You've not been called as an expert, Mr. Burse. You're simply being called as the defendant. . . . In addition, because this is a civil proceeding, the State has the right, as do you, to call any witness that they think may be relevant. Of course any party has the right to object and say this witness's testimony is not relevant. And that applies not only to you but to any other witnesses. But the State has a right to call you as a witness, just as they do to call anyone else.

Supplemental R. at 25–26, ECF No. 19. The court went on to explain appellant's Fifth Amendment right against self-incrimination and how he could invoke that right while testifying.

The bankruptcy court was correct is stating that Federal Rules of Evidence 702 and 703, which apply to expert witnesses, did not apply to appellant, and that because this is

6

a civil case, appellant could be called to the witness stand. Thus, the court did not abuse its discretion in denying appellant's motion.

**C. Determination that debt is non-dischargeable**

Appellant also challenges the bankruptcy court's finding that his debt to appellee is non-dischargeable under § 523(a)(2)(A). The court applied the elements outlined in *Ojeda*, 599 F.2d 712, which the parties agree is the correct legal standard. Appellant however challenges the court's factual findings based on the evidence presented. I may only reverse the trial court's factual findings if they are clearly erroneous. *Tidwell v. Smith*, 582 F.3d 767, 777 (7th Cir. 2009). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.*

First, the bankruptcy court concluded that appellant misrepresented his educational credentials on his resume and submitted fraudulent documentation supporting those credentials. The bankruptcy court found that a diploma is not required for DBE certification, but that it was a factor WisDOT used to determine whether appellant was qualified for DBE certification. Supplemental R. at 227–29, ECF No. 19. The court found the fact that the state withdrew appellant's DBE certification when it found out about the misrepresentations to be circumstantial evidence that WisDOT would not have certified him had he not had the educational background he originally claimed to have. *Id.* at 230. The court also concluded that appellant made these misrepresentations knowingly and with the intent to deceive WisDOT. *Id.* at 232. As support, the court cited the extraordinary lengths to which appellant went to perpetuate his initial misrepresentations by falsifying university documents. Finally, the court concluded that the appellee was justified in relying upon the false information

7

appellant provided and that appellant directly benefitted from the misrepresentation by obtaining DBE certification and receiving subsequent WisDOT contracts. Because the court found that appellee had proven all *Ojeda* elements by a preponderance of the evidence, the court concluded that appellant's misrepresentations regarding his educational credential alone was enough to render the debt non-dischargeable. *Id.* at 232.

Appellant raises several issues regarding this part of the court's conclusion. First, appellant asks me to reverse this finding because a diploma is not required for DBE certification, thus the fact that he lied about having a diploma does not matter. I find that the trial court did not clearly err on this issue. The court agreed with appellant that DBE certification does not require a diploma; however it disagreed that this rendered his misrepresentation irrelevant. The court's finding that despite not being required, an applicant's educational background is a factor WisDOT considers is not clearly erroneous. Experts from WisDOT testified that while a diploma is not required, it is important information used to show expertise and something WisDOT considers in determining whether someone is qualified. I also agree with the court that the fact that appellee revoked appellant's certification when it found out about the falsified educational credentials tends to support a finding that it was at least a factor in their original certification decision.

Second, appellant argues that appellee did not lose any money by certifying appellant. The trial found that appellant's misrepresentation about his educational credentials benefitted him because it enabled him to obtain DBE certification, through which he received government contracts. Combined with the trial court's finding that appellant fraudulently overbilled the government under these contracts, the conclusion that the misrepresentation of educational credentials led to a monetary injury is not clearly

8

erroneous.

The court then moved on to the billing issues and concluded that appellant submitted fraudulent invoices. The court acknowledged that there was no direct evidence that appellant himself changed time sheets or invoices, but cited other circumstantial evidence to support its findings, including testimony by a forensic accountant that the number and pattern of errors tend to indicate fraud not mistake, bills and time sheets with different signatures and evidence of changes, and testimony of an employee that the signature on his time sheet was not his and he never authorized anyone to change his time sheet. Supplemental R. at 234–35. Further, the court found that appellant himself was responsible for these actions, citing his signature on various time sheets, invoices, and other documents; the fact that appellant was the sole owner and operator of Buveck; and testimony that appellant was responsible for billing practices and "had his fingers in every pie." *Id.* at 233. The pattern of errors, evidence of changes to time sheets, and other circumstantial evidence also supports a finding that appellant knew he was committing fraud, intended to deceive appellee, and that appellee relied on the fraudulent invoices. Additionally, the evidence supports a causal connection between the fraudulent billings and the monetary injury to appellee; had appellant not overbilled, appellee would not have overpaid. Based on these two fraudulent acts, the court concluded that the debt is non-dischargeable.

Appellant raises several issues with this conclusion. First, appellant argues that the bankruptcy court erred in concluding that he committed fraud through his billing practices. Specifically, he argues that he subcontracted for prime consultants, and because the prime consultants submitted the billing invoices to WisDOT, the court should not have found him

liable. I find this argument to be without merit. Although the prime consultants were contractually liable to WisDOT, this does not diminish appellant's responsibility. According to the court, the evidence showed that appellant, not other prime consultants, was responsible for intentionally falsifying time sheets and billing invoices with the intent to deceive. It did not clearly err in making these findings.

Second, appellant argues that the court erred in concluding that he was individually responsible for the fraudulent acts when it was the company that applied for DBE certification and issued the bills. Specifically, appellant argues that appellee was required and failed to prove the elements required to "pierce the corporate veil." Appellee argues that while the theory of piercing the corporate veil was involved, it was not its only theory of personal liability. It also alleged that appellant was individually responsible because he personally committed the fraudulent acts and because he was a direct recipient of the fraudulently obtained funds.

Corporate veil-piercing claims, also known as alter-ego claims, are state law claims over which the bankruptcy court does not have Article III authority to enter final judgment. *See Wellness Int'l Network, Ltd. v. Sharif*, 727 F.3d 751, 775–76 (7th Cir. 2013) ("[The bankruptcy court] lacked constitutional authority to enter final judgment on [plaintiff's] alter-ego claim."). However, bankruptcy courts can make decisions "related to" the bankruptcy case. 28 U.S.C. § 1334(b); Norton Bankruptcy Law & Practice § 57:68 (3d ed. 2014). In its oral ruling, the bankruptcy judge did not specifically address the issue of corporate veil-piercing. Rather, the court made factual findings that it was appellant himself who committed fraud in the context of § 523(a)(2). The court found it was appellant himself who lied on his resume, submitted false university documents, and changed billing information.

10

Further, the court found it was appellant himself who benefitted from these fraudulent acts. The issue of who committed fraudulent acts alleged under § 523(a)(2)(A) is an issue related to the claim. Thus, I find that the bankruptcy court did not make a final determination regarding the alter-ego claim, but rather that it decided an issue related to the § 523(a)(2) claim that a debt appellant owed should not be dischargeable. Further, I conclude that these findings were not clearly erroneous in light of the evidence presented.

Because the bankruptcy court's factual findings regarding the dischargeability of the debt were not clearly erroneous, I affirm.

### D. Miscellaneous issues

Appellant also brings up several miscellaneous issues. First, appellant argues that the bankruptcy court did not have jurisdiction over this particular debt because there is no court-ordered judgment declaring that appellant owes this money. 28 U.S.C. § 157(b)(2)(I) gives the bankruptcy court authority to enter appropriate judgments regarding "determinations as to the dischargeability of particular debts" in all Title 11 core proceedings. 11 U.S.C. § 101 defines "debt" as "liability on a claim," and defines "claim" as "right to payment, whether or not such right is reduced to judgment." Thus, appellant's argument that appellee's claim must be reduced to a judgment before seeking relief in the bankruptcy court is incorrect.

Second, appellant argues that appellee should have been required to exhaust its administrative remedies before bringing this adversarial complaint in bankruptcy court. Appellant seems to argue that the United States Department of Transportation has authority to decide DBE certification disputes. However, the issue that appellee raised in bankruptcy court was dischargeability of the claim, over which the bankruptcy court has

11

jurisdiction. *See* § 523(a)(2); Fed. R. Bankr. P. 4007, Advisory Committee Notes ("The bankruptcy court has exclusive jurisdiction to determine dischargeability of these debts."). Thus, I conclude that the bankruptcy court appropriately exercised jurisdiction.

Third, appellant seems to argue that the bankruptcy court's decision should be reversed because appellee's forensic accountant, Mary Braaksma, lied in her testimony. Credibility determinations are left to the fact-finder, in this case the bankruptcy judge. *Marshall Joint School Dist. No. 2 v. C.D. ex rel. Brian D.*, 616 F.3d 632, 638 (7th Cir. 2010) ("[W]e rarely reverse on a credibility determination . . . we overturn it only if patently wrong."). Appellant had an opportunity to cross-examine Braaksma and to present evidence that contradicted Braaksma's testimony. Appellee presented other evidence which supported Braaksma's testimony, thus I cannot say the court was patently wrong in giving weight to Braaksma's testimony.

Fourth, appellant argues that the court should have deferred to a forum with more specialized knowledge in determining whether a diploma was required for DBE certification. However, I find nowhere in the record where appellant made this request at the trial level. Thus, appellant has waived this issue. *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012).

Finally, appellant argues that certain evidence should not have been admitted because the exhibits produced were not originals and also because certain documents contained hearsay. Appellant did not raise these issues at trial and therefore waived his right to challenge them on appeal. *Id.*

### III. Conclusion

**THEREFORE, IT IS ORDERED** that the bankruptcy court's opinion is **AFFIRMED**.

Dated at Milwaukee, Wisconsin, this 31st day of October, 2014.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge